FILED
02 SEP 30 PM 2:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 3 0 2002

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBBIE HANEY,

    Plaintiff,

v.                    01-AR-3010-M

ROBIN LYNN MILLS, INC.,

    Defendant.

## MEMORANDUM OPINION

    Before the court is a motion by defendant, Robin Lynn Mills, Inc., ("Robin Lynn"), for summary judgment. Plaintiff, Robbie Haney, ("Haney"), a 61 year old female, instituted this action against her employer, Robin Lynn, on November 26, 2001, asserting claims pursuant to the "Age Discrimination in Employment Act" ("ADEA"), 29 U.S.C. § 621, et seq. Haney claims that she was discriminated against on account of age when Robin Lynn terminated her employment on February 12, 2001, due to an alleged reduction in force (RIF).

### Material Facts

    Robin Lynn is a corporation that is subject to the ADEA and that does business in Fort Payne, DeKalb County, Alabama. It manufactures socks, both a "heel and toe" and a "tube" type athletic sock. It sells its socks to "finishing mills," that finish the socks, package them, and sell them to wholesale or retail customers. One of the lines that Robin Lynn was producing during the relevant time period was the "tube" style line that it

sold to the finishing mill, Prewitt Mills Inc. ("Prewitt"). Haney, who began working for Robin Lynn in 1986, was working as a "seamer" operating a "turn-sew" machine that sewed the toes of the "tube" style athletic sock line in February of 2001, when she was terminated. The "tube" type socks that Haney worked on were sold to Prewett, which in turn finished, package, and sold the socks to Sam's Wholesale Club ("Sam's") as style 365.

In early 1999, Robin Lynn was manufacturing approximately 40,000 dozen pairs of "tube" socks per week. However, by December of 1999, production was down by approximately 13,4000 dozen pairs per week. The first wave of layoffs and reassignments as a result of Robin Lynn's economic troubles occurred in February of 2000. Around that time, Robin Lynn moved Haney to a machine called a "complett" on another line that produced a "heel and toe" type of athletic sock. During most of her tenure with Robin Lynn, Haney had worked primarily on the "turn-sew" machine on one of the four lines that produce "tube" socks. Shortly after being moved to the "complett" machine and the "heel and toe" line, Haney requested that she be moved back to the "turn-sew" machine when a position opened because she was not making as much money in her new position.[1] By October of 2000, the "tube" sock production line was cut by another 20,000 dozen pairs per week, initiating the second wave of layoffs and

---

[1] Seamers are paid on a one hundred percent production basis.

reassignments. Around December 2000, Haney's supervisor, Frank Crump ("Crump"), asked Haney if she wanted to return to the "turn-sew" machine and the "tube" line. Haney agreed and went back to work on line two producing "tube" style socks on the "turn-sew" machine.[2]

According to Dale Jackson, Jr. ("Jackson"), Plant Manager of Robin Lynn, Prewett, defendant's largest customer, informed it in the latter part of 2000, that Sam's was discontinuing style 365, and that there was no other style for Robin Lynn to run in place of it. As a result of the loss of business Robin Lynn was forced to "almost immediately shut down two of [its] four lines of 'tube' machines," lines one and two (affidavit Dale Jackson, Jr.). According to Robert C. Chisenhall, Chairman of the Board, Robin Lynn made the business decision to shut down two of the four "tube" sock lines with the intention of eventually replacing them with a new "heel and toe" line because there was a limited market for "tube" socks.

It was Robin Lynn's practice, or so it contends, to assign each seamer to a particular line of machines, and if that line

---

[2]   Q: All right. Let me ask you – why did you make a switch, then, from the complett machine back to the tube seamer?
A: Because I wanted to make more money.
Q: All right. And was that, then, a decision – you volunteered to do tht so you could make more money; is that right?
A: Yes.

3

was shut down then that person's job was eliminated.  Haney was terminated when the "tube" sock line she worked on was shut down and pulled from the plant and there was no more work seaming overruns and irregulars from inventory.  On February 12, 2001, Haney was called by her supervisor, Crump, and told not to report to work because there was no more work for Haney to do.

Robin Lynn contends that Haney was laid off in a RIF in accordance with its business decision to change some of its manufacturing lines over to the "heel and toe" style.  Haney contends that when she returned to the plant to speak with Jackson, the Plant Manager, that she saw younger workers working in the same position that she had previously worked in.  Robin Lynn does not dispute that Haney observed workers in the plant location that Haney worked in previously, but contends that it moved production lines three and four into the physical location previously occupied by lines one and two.[3]

---

[3]In her deposition of June 11, 2002 Haney admits as much:

> Q: Who is Loretta Johnson?
> A: She works on Line 2, I think, now. I think that's the line she went on to start with.
> Q: Okay. And do you know whether Line 2 is the same Line 2, as far as the same machines and everything, that was there before?
> A: No.
> Q: No, you don't know? Or, no, it's not?
> A: Oh, there -- they put 3 and 4 machines up there. Off of Line 3 and 4 they put the seaming machines up there.
> Q: Okay. On Line 2?
> A: (Witness nods head.)

After shutting down lines one and two, Robin Lynn operated at about forty percent capacity for a while until it ordered and installed thirty-four "Lonati" knitting machines and a new "complett" machine for its new "heel and toe" line, some time after Haney was terminated.[4]

Haney, however, contends that she was terminated because of her age, sixty one, rather than for Robin Lynn's legitimate business reason of a RIF occasioned by its changing its manufacturing line. In all, Robin Lynn terminated ten employees ranging in age from 25 to 62 in its second wave of layoffs from

---

[4]Testimony of Dale Jackson, Jr., Plant Manager, June 11, 2002:

> Q: Let me try to clear up one thing.
> We had -- based on my information that we had provided earlier in this concerning the seaming machines that had been put in service or taken out of service since Mrs. Haney was laid off, I think the information that I had then was that there had been four machines taken out of service and one machine put in service -- seaming machine. Isn't that -- can you tell me today that not --
> A: Well, originally -- I know for a fact that we took two tube machines out right then effectively basically immediately. And we -- I'm wanting to say due to our production abilities at that particular time, we had another tube machine that did nothing but seam overruns when one operator couldn't handle the load. We took that one out, as well. So I can fairly state that I know for a fact that we took out three tube machines, and they're wrapped up in Saran Wrap somewhere. They're no longer in production, nor have been, since January. . .
> Q: Okay. And there's -- how many seaming machines have been added since Mrs. Haney left?
> A: We added a new complett about six months ago...

December 2000, to March of 2001.  Three employees terminated during this period were in her twenties, one in their thirties, one in their forties, two in their fifties, and two in her sixties.  Nevertheless, Haney disputes that this constitutes a company-wide RIF, or that her job was eliminated.  Haney asserts that she had experience on the complett "heel and toe" machine, and that Robin Lynn could have transferred her back to the complett "heel and toe" machine in lieu of termination.

    Haney further contends that even if Robin Lynn's layoff was legitimate, it still discriminated against her on account of her age because she was not called back to work when Robin Lynn started production on its new line of "heel and toe" socks after the new Lonati machines were installed.  Haney contends that fourteen individuals were hired by Robin Lynn into knitting and seaming jobs on the new Lonati machines after she was terminated.  Of the fourteen hired to work the Lonati machines, eight individuals were under thirty and only three were over forty, the oldest being forty-four.  It is Haney's position that Robin Lynn had to call Haney back to work because even though Robin Lynn was making a change in its manufacturing lines Haney was qualified as a "seamer," and the position of seamer had not been eliminated but rather just the line of machines.  Haney admits that if Robin Lynn had called her back to work on the new line she would have had to receive training, but she contends that would be the

6

situation regardless of who Robin Lynn hired. According to the testimony of Crump, the Plant Manager, "most of the people we [Robin Lynn] hire has to be trained on heel-and-toe machines." (Crump Depo., p. 13).

## Analysis

This is a RIF/age discrimination case. Accordingly, in order to establish a *prima facie* case of age discrimination in the context of a RIF, Haney must show that she was a member of a protected class and was adversely affected by an employment decision; that she was qualified to assume another available position at the time of her discharge, and; such additional evidence that would allow the fact finder to conclude that Robin Lynn intended to discriminate on the basis of age in reaching its decision. *Earley v. Champion Inter. Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990).

Robin Lynn does not dispute that Haney has met the first two elements of her *prima facie* case. Haney is sixty-one, and she was terminated from her position as a seamer on the "tube" style sock line at Robin Lynn when lines one and two were shut down. Robin Lynn asserts that Haney has failed, as a matter of law, to meet the third element of her *prima facie* case because Haney has not submitted substantial evidence from which a reasonable fact finder could conclude that it intended to discriminate on the basis of age. Robin Lynn contends that it made the legitimate

7

business decision to shut down production lines one and two that produced "tube" style socks because of market conditions, and following its policy terminate those employees who work on a line when a line is taken out of production. Haney worked on one of these terminated lines as a matter of her chose.

In an attempt to establish her *prima facie* case, Haney would distinguish her case from binding Eleventh Circuit precedent. *See Early* v. *Champion Inter. Corp.*, 907 F.2d 1077; *Mitchell v. Worldwide Underwriters Insur. Co.*, 967 F.2d 565 (11th Cir. 1992). Haney disputes Robin Lynn's assertion that there was a company-wide RIF as in *Early*, or that her position was eliminated in contrast to the plaintiff in *Mitchell*. Haney contends that these cases are inapposite because Robin Lynn could have transferred her to one of the remaining lines, three or four, sewing "tube" style socks, or in the alternative rehire her when Robin Lynn brought the new "heel and toe" line into production. In other words, Haney contends that she held the position of "seamer," and because Robin Lynn retained other "seamers" during the alleged RIF and hired new "seamers" on its "heel and toe" line, Robin Lynn discriminated against her because of her age. In contrast to *Earley* and *Mitchell*, Haney contends that "only a machine was changed, not the position of 'seamer' eliminated." (Haney Brief, at p.8).

Haney is correct that when there is a job for which the

8

plaintiff is qualified and she applies at the time of her termination, the fact that the employer offers the job to an individual outside the protected age group, creates an inference of intentional discrimination. (Pltff's Brief at p. 9, relying on the Eleventh Circuit decision in *Jameson v. Arrow Co.*, 75 F.3d 1528 (11th Cir. 1996)). Haney, however, has not shown that there were job openings available when Robin Lynn decided to shut down lines one and two for economic reasons. Furthermore, Haney has not shown that she applied for an open position and was rejected, and the position was filled by someone outside the protected class. There may have been "seamers" on lines three and four whom Robin Lynn decided to retain, but according to the record there were no job openings. Robin Lynn chose a legitimate method of choosing which employees to terminate during the RIF, and Haney has not submitted substantial evidence to dispute this reason or to prove it pretextual. Months before her termination, Haney voluntarily chose to go back to "tube" line one so that she could make more money. Robin Lynn "incurred no duty to transfer [Haney] to another position within the company," especially if transferring her would result in the displacement of another employee. *Early*, 907 F.2d at 1083 (citing *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 942 n.6 (6th Cir. 1987). "The ADEA does not mandate that employers establish an interdepartmental transfer program during the course of an RIF, require that

9

'younger employees be fired so that employees in the protected age group can be hired,' or impose any added burden on employers to transfer or rehire laid-off workers in the protected age group as a matter of course." *Jameson*, 75 F.3d 1528 (11th Cir. 1996)(internal citations omitted).

Assuming *arguendo* that Haney has established her *prima facie* case of age discrimination in the context of Robin Lynn's RIF, the burden shifted to Robin Lynn to proffer a legitimate nondiscriminatory reason for its decision under the familiar *McDonald Douglas/Burdine* framework. Robin Lynn contends that it was its policy to terminate the employees working on a line when the line was shut down and the machines were retired. In order to survive summary judgment, Haney must present concrete evidence that Robin Lynn's decision to terminate her in accordance with its RIF policy was mere pretext for discrimination. "Mere conclusory allegations and assertions will not suffice." *Early*, at 1081.

In other words, Haney must show a nexus between her discharge and age discrimination. *Early*, 907 F.2d at 1083. Ten seamers, including Haney, lost their jobs from December 2000 to March 2001. Four were in their twenties; one was in her thirties; one was in her forties; two were in their fifties and; two, including Haney, were in their sixties. This evidence does not raise an inference of or create an evidentiary basis for

10

arguing the existence of age discrimination.

Nevertheless, Haney argues that her position as seamer was not, in fact, eliminated and that in fact Robin Lynn replaced her fourteen times, all by individuals under the age of fifty, because it hired and trained these individuals on its new "heel and toe" line in the year following Haney's termination. Haney does not show by evidence when these seamers were hired, or whether any were hired for positions that existed when Haney was terminated.[5] Speculation cannot establish an ADEA violation.

### Conclusion

The law does not "impose any added burden on employers to . . . rehire laid-off workers in the protected age group as a matter of course." *Jameson*, 75 F.3d at 1543. Haney has not presented substantial evidence of pretext. Robin Lynn's motion for summary judgment will be granted by separate order.

DONE this 30th day of September, 2002.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[5] According to the undisputed testimony of Jackson, the Plant Manager, the new complett machine was added some time around the end of 2001.

11